## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

**ERIC EUGENE MASON**                                             **PETITIONER**

**VS.**                         **CASE NO. 5:15CV00002 BRW/PSH**

**WENDY KELLEY, Director of the**
**Arkansas Department of Correction**                           **RESPONDENT**


## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Billy Roy Wilson.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.


### DISPOSITION

On January 5, 2015, Eric Eugene Mason ("Mason") filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He is currently in the custody of the Arkansas Department of Correction (ADC) due to his 2011conviction for second degree murder following a jury trial in Sebastian County Circuit Court.  He was sentenced on December 8, 2011 to a term of 540 months of imprisonment.  *Docket entry no. 10-2.*  On direct appeal, Mason contended the trial court erred by denying his motion for directed verdict, and by refusing his proffered jury instruction for negligent homicide.  The Arkansas Court of Appeals affirmed his conviction on January 30, 2013. *Mason v. State*, 2013 Ark. App. 48; *docket entry no. 10-5.*  Mason filed a Rule 37 petition in state court on March 13, 2013, alleging numerous instances of ineffective assistance of counsel.  The

petition was 10 pages long, not including the notarized signature page or exhibits. *Docket entry no. 10-6.* After conducting a hearing, the trial court entered Findings of Fact and Conclusions of Law on July 25, 2013, denying relief. The trial court addressed nine claims advanced by Mason. *Docket entry no. 10-9.* Mason appealed the denial of Rule 37 relief.

On January 23, 2014, the Arkansas Supreme Court dismissed the appeal, finding the Rule 37 petition was not in compliance with Arkansas rules in that it was not verified as required by Rule 37.1(c).[1] *Docket entry no.10-11.* Specifically, the Arkansas Supreme Court found Mason's Rule 37 petition "was not in compliance with Rule 37.1(c), it should not have been accepted for filing, and it did not act to confer jurisdiction on the trial court to consider the merits of the petition." Because the trial court did not have jurisdiction, the appellate court did not have jurisdiction. Additionally, the court found that the Rule 37 petition, including its attachments, "far exceeded the ten-page length allowed" for Rule 37 petitions.[2] *Id. at page 3.*

Mason filed his petition for a writ of federal habeas corpus within one year of the date the Arkansas Supreme Court dismissed his appeal, and almost two years after the Arkansas Court of Appeals affirmed his case on direct appeal. In the petition, filed on January 5, 2015, Mason advances the following claims for relief:

1.  He was denied the effective assistance of counsel at trial because his attorney failed to object to the racial composition of the jury;

2.  He was denied the effective assistance of counsel in the plea bargaining process;

3.  He was denied the effective assistance of counsel when his attorney failed to request a mental evaluation before trial;

4.  He was denied the effective assistance of counsel when his attorney failed to call an

---

[1]Mason's signature attached to the petition was notarized, but not verified. Rule 37.1(c) requires petitions to include verification that the facts in the petition are true, correct, and complete.

[2]In its opinion, the Arkansas Supreme Court stated that attachments are considered part of the Rule 37 petition for purposes of the page limitation. *Id.* (*citing Hatton v. State*, 2012 Ark. 286 (per curiam)).

expert to show the victim was both drunk and high on drugs at the time of the altercation;

5.      He was denied the effective assistance of counsel when his attorney failed to call eyewitnesses;

6.      He was denied the effective assistance of counsel when his attorney denied him the right to testify;

7.      He was denied the effective assistance of counsel when his attorney failed to introduce evidence of the victim's criminal history to show his propensity for drug use and violence;

8.      Mason is actually innocent;

9.      He was denied the effective assistance of counsel when his attorney failed to point out inconsistencies in testimony offered by prosecution witnesses; and

10.     The Arkansas Supreme Court exalted form over substance, thereby denying Mason of his right to a meaningful review of the trial court's denial of his Rule 37 petition.

Respondent Wendy Kelley ("Kelley") contends the statute of limitations bars consideration of all of the claims, and also that Mason's claims are procedurally defaulted or not cognizable. *Docket entry no. 10.* On July 9, 2015, Mason responded to Kelley's assertion. *Docket entry no. 11.* Prior to addressing the merits of any claims, we first consider if the petition for writ of habeas corpus is properly before the Court.

**Statute of Limitations:** The math behind Kelley's argument is as follows: Mason's direct appeal was denied on January 30, 2013; Mason did not seek review or rehearing in the allotted eighteen days after the Arkansas Court of Appeals' opinion, rendering the judgment final on February 18, 2013; Mason should have filed his federal habeas corpus petition during the one year period beginning on February 18, 2013; and Mason filed his federal habeas corpus petition on January 5, 2015, roughly ten and a half months too late.

Section 101 of 28 U.S.C. 2244 (as amended) imposes a one year period of limitation on

3

petitions for writ of habeas corpus:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Mason allows that his habeas petition "may not be within the strict one-year statute of limitations". *Docket entry no. 11, page 9.*  Liberally construing his reply, he contends he is entitled to statutory and equitable tolling of the limitations period.

*Statutory Tolling:*  The statute itself allows for tolling of the limitations period while a "properly filed" postconviction petition is pending in state court. 28 U.S.C. § 2244(d)(2).  Kelley, citing the Arkansas Supreme Court's dismissal due to Mason's lack of verification,  asserts that Mason's Rule 37 petition was not properly filed.  As a result, the limitations period ran without interruption beginning on February 18, 2013.  Mason argues the Arkansas Supreme Court's decision was erroneous, exalting form over substance in requiring Mason to comply with the verification of his Rule 37 petition.  The result of this error, according to Mason, is that he was denied full review of his constitutional claims and the claim of actual innocence.  Mason also claims he actually attached an affidavit of verification as page twelve to his Rule 37 petition, and contends the Arkansas Supreme Court should have accepted this verification even though his petition exceeded

the ten page limit imposed by Ark.R.Crim.P. 37.1(b).[3]  In essence, Mason invites this Court to substitute our judgment for the judgment of the Arkansas Supreme Court regarding Arkansas postconviction procedures.  This is not our role.  State courts are the ultimate expositors of their own state's laws, and federal courts entertaining habeas corpus petitions are bound by the construction placed on a state's laws by the courts of that state except in extreme circumstances.  *Mendiola v. Estelle*, 635 F.2d 487 (5th Cir. 1981).  Here, there is no reason to reject the state court's construction and application of its statutes and rules.

The statutory tolling provision is activated only while a properly filed postconviction petition is pending in state court.  The Arkansas Supreme Court found Mason's Rule 37 petition was not properly filed.  Therefore, the limitations period began on February 18, 2013, and ran without regard to the time during which Mason sought Rule 37 relief in state court.

*Equitable Tolling:* Mason also contends equitable tolling renders his petition timely. He points to his actual innocence as the equitable basis for tolling the limitations period, citing *McQuiggin v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924 (2013).  In *McQuiggin*, the Supreme Court held that actual innocence, if proved, may serve as a gateway through which the petitioner may pass to overcome the expiration of the statute of limitations.  The Supreme Court emphasized, however, that a tenable actual innocence gateway plea is rare.  To advance a tenable claim, the petitioner must meet the standard set forth by the Supreme Court in an earlier case:

---

[3]The Arkansas Supreme Court addressed this argument in its decision dismissing Mason's appeal of the denial of his Rule 37 petition as follows:

> One of the exhibits to the Rule 37.1 petition was verified, but the verification clearly pertained to the exhibit only.  The exhibit was a description of discussions between appellant and his attorney.  The verification on the exhibit reads in its entirely, "I further swear that the description of the incident contained herein, is a true, accurate and impartial description to the best of my knowledge, information and belief."  The verification of the exhibit does not substitute for verification of the petition itself.

*Docket entry No. 10-11, p. 2, fn 1.*

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995).  The Court further defined the standard required of a petitioner claiming actual innocence: he "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  513 U.S. at 327.

In support of his actual innocence claim, Mason argues that "[i]f a person injures another in self-defense he has, as a matter of law, not committed a crime – he is actually innocent.  Mason claims his attorney was ineffective in not properly presenting his self-defense claims to a jury, not allowing Mason to testify as to what happened and his state of mind at the time, essential elements of a self-defense claim." *Docket entry no. 11, pages 8-9.*  This argument, however, fails to meet the requirement of *Schlup* that a petitioner submit new reliable evidence that was not presented at trial.  There is nothing new about the self-defense claim of Mason.  He requested and received a jury instruction on justification, or self-defense.  His attorney advanced this argument in closing.  Reinterpreting the facts presented at trial, or second-guessing trial strategy does not establish actual innocence.  There is no merit to Mason's equitable tolling argument founded upon actual innocence.

We find neither statutory nor equitable tolling interrupted the limitations period after it began on February 18, 2013.  Mason's January 2015 federal habeas petition was untimely, and we recommend dismissal on that basis.

**Merits of Mason's Ineffective Assistance of Counsel Claims:** If we were to overlook the limitations barrier, and also to overlook the barrier of procedural default pled by Kelley, there is no merit to Mason's claims of ineffective assistance of counsel.  *See McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (approving the bypass of procedural default analysis and addressing the merits in some instances).

Mason alleges eight instances of ineffective assistance of counsel (claims 1-7, and 9)[4]. We will first consider these claims, then turn to the merits of claims 8 and 10.

In order to prove ineffective assistance of counsel, petitioner must prove that (l) his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 688 (l983); *Ryder v. Morris*, 752 F.2d 327, 33l (8th Cir. l985). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Kellogg v. Scurr*, 74l F.2d l099, ll0l (8th Cir. l984); *Bell v. Lockhart*, 74l F.2d ll05, ll06 (8th Cir. l984). This presumption is created to "eliminate the distorting effects of hindsight," and recognizes that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689; *Ryder*, 752 F.2d at 33l.

We carefully reviewed the trial transcript to determine if Mason's trial attorney acted unreasonably. Mason was charged with second degree murder in the death of Josh Walters. Walters, his girlfriend Tara Sellers, and his best friend Josh Flanagan, came to the apartment complex where Mason lived in Fort Smith, intent on obtaining pills on July 1, 2011. Walters, Sellers, and Flanagan spent most of the day at the apartment complex, taking pills and consuming alcohol, including spending a portion of the day in Mason's apartment, along with Mason's girlfriend, Kaylani Sims. Later that evening a fight occurred between Walters and Mason. Walters was stabbed and died shortly thereafter.

In his opening statement, Mason's attorney stated the evidence would show Walters attacked

---

[4]Here, the Arkansas Supreme Court determined the trial court was without jurisdiction to hear Mason's Rule 37 petition. As a result, any factual findings and legal conclusions rendered by the trial court in the Rule 37 proceeding are without force. Traditionally, factual findings are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1), and legal conclusions are entitled to deference under 28 U.S.C. § 2254(d)(1), (2). Not so in this case, due to the absence of jurisdiction. Our analysis proceeds as if no Rule 37 decision was entered in state court.

7

Mason, said "I'll kill you", and reached into his pocket.  (Tr. 147).  Mason, according to his attorney, reacted in "shock and fear" when he stabbed Walters.  (Tr. 148).

Sellers, the prosecution's first witness, conceded that she, Walters, and Flanagan were taking pills in Mason's apartment after five o'clock.  She described Mason and Sims as continually arguing throughout the afternoon and evening.  Sellers testified the entire group relocated outside the apartment and spent 2-3 hours outside before she heard Mason and Sims arguing in back of the apartments.  She stated she and Walters approached, asking Mason and Sims to stop.  Mason allegedly stated "I don't give a damn" and kicked Sellers in the foot.  Sellers stated ". . . that's when they [Mason and Walters] started fighting."  (Tr. 159).  Sellers stated Walters threw the first punch but Mason got Walters on the ground.  According to Sellers, Flanagan then arrived on the scene, grabbing Mason off of Walters.  Walters then said, "I've been stabbed."  (Tr. 160).  The stab wound to the throat area "started gushing blood."  (Tr. 160).  Sellers testified Walters had no weapon – "All he had was his fists." – and that she did not hear Walters threaten Mason.  (Tr. 161, 165).  On cross examination, Mason's attorney effectively highlighted Sellers' testimony that Walters threw the first punch.  Sellers also conceded her testimony was at odds with her statement to the police at the time, which did not indicate Walters threw the first punch.  Sellers admitted, upon questioning from Mason's counsel, that Walters was very angry at Mason.  Sellers denied seeing Walters with his arm around Mason's neck, and denied hearing Walters say, "I'll kill you."  (Tr. 168-175).

Officer Franklin Snell, Fort Smith Police Department, testified to taking photos at the scene and in Mason's apartment.  Snell stated the search of the apartment yielded no knife.  On cross-examination, Snell conceded that the search occurred only because Mason executed a permission to search the premises.  (Tr. 181).

Brandon Djordevic, Fort Smith Police, testified Mason and a female were in the apartment shortly after the stabbing, and they refused entry to Djordevic for about 2-3 hours.  Djordevic stated he and other officers searched the grounds for weapons, but found none.  On cross examination, Djordevic admitted there "was a large number of civilians in the parking lot."  (Tr. 187).  This

testimony may have offered a possible explanation for the disappearance of the knife.

Officer Galen Irvin stated he was one of the first officers to arrive on July 1 at the apartment complex.  He found no weapon near the bloodied Walters.  Before emergency workers arrived, Officer Irvin took a few photos.  On cross examination, Irvin agreed there was a large group of civilians in the area.

Josh Flanagan testified he was Sellers' cousin and Walters' best friend.  Flanagan agreed with earlier testimony of pills and alcohol, and of Mason arguing with Sims.  He described the fight starting without words between Mason and Walters, then proceeding with Mason being on top of Walters.  Flanagan stated he grabbed Mason to allow Walters to get away, but Walters stated, "He stabbed me, Homeboy." (Tr. 200).  Flanagan testified Mason and Sims ran into Mason's apartment. Flanagan stated he never saw a knife, and that Walters "ain't that type of guy.  He doesn't know how to use weapons." (Tr. 201).  Flanagan, on cross examination, stated he did not remember telling Fort Smith Police on July 2 he had not consumed pills or alcohol the day of the stabbing.  He also denied telling Fort Smith Police that Walters ran at Mason and tackled him to start the fight.  Both concessions by Flanagan were effective challenges to his credibility.

Fort Smith Police Officer Richard Wright testified to unsuccessfully searching the scene for a knife, and Mason's counsel again elicited testimony of the large crowd at the scene.

Medical Examiner Dr. Daniel Dye testified Walters died as a result of a three inch deep stab wound inflicted by a single edged knife.  Dr. Dye opined Walters died within a minute of the stabbing.  According to toxicology tests done by Dr. Dye, Walters was positive for marijuana, cocaine, opiates, and alcohol.  On cross examination, Mason's counsel requested details about the toxicology reports, emphasizing the amount of illegal substances and alcohol in Walters' system.

The final prosecution witness was Maria Vasquez, a resident of the apartment complex where the stabbing occurred.  Vasquez observed Mason screaming at his girlfriend around ten p.m. on July 1.  Vasquez left the apartment complex, returning around eleven o'clock to find Walters in a pool of blood.  Vasquez telephoned for an ambulance.  On cross examination, Vasquez agreed that

she would have called the police had she thought Mason was a threat to his girlfriend.  However, "[h]e was just screaming at her to pay attention to what he was saying."  (Tr. 239).

After the prosecution rested and Mason and his attorney conversed off the record, the defense rested without calling any witnesses.  The jury was instructed that Mason should not be found guilty of second degree murder if he reasonably believed Walters was using or about to use unlawful deadly physical force, and if Mason used only such force as he reasonably believed to be necessary. (Tr. 273).  The jury was also instructed on the lesser included offense of manslaughter.  (Tr. 271). In his closing argument, Mason's attorney stressed Sellers' testimony that Walters threw the first punch, as well as Flanagan's statement to police that Walters ran at Mason and tackled him to start the fight.  Mason's attorney also emphasized Walters' toxicology report.  Citing the justification instruction, Mason's counsel urged he was not guilty of second degree murder.  Alternatively, he asked the jury to find Mason acted recklessly, rather than knowingly, and thus was guilty of manslaughter rather than second degree murder.

Under *Strickland* we must view the totality of the circumstances to determine if Mason's counsel acted unreasonably and, if so, whether the outcome of the trial would have been different but for the attorney's behavior.  We find Mason's trial attorney did not act unreasonably under the circumstances.

*Claim 1 – Batson:*  In his petition, Mason asserts each and every black venireperson was excluded because they were black and for no non-discriminatory purpose.  Mason concedes that no objection was lodged to the jury selection.  The trial transcript does not reflect the race of the potential jurors.  The record does not support the claim that all potential black jurors were excluded, nor the conclusion that they were excluded because of their race and for no non-discriminatory purpose.  Mason fails to show a *Batson* objection would have been successful.  More importantly, even if his attorney successfully challenged the jury's composition, he fails to show the result of the trial would have changed.

*Claim 2 – Plea Bargaining:* Mason claims his attorney failed to advise him of a "drop dead"

date for plea negotiations of November 22, 2011, in advance of the jury trial set for December 5, 2011. Had his attorney told him of this deadline, and had Mason "known how inept his trial counsel was, he might have, and probably would have accepted" a plea bargain. *Docket entry no. 1, page 6.* The trial transcript is informative, in that Mason did not object at the outset of the trial to its commencement. The trial transcript also reflects an Order from the trial court dated September 13, 2011, continuing the case until December 5, 2011. Contained in this Order is the following sentence: "If this case is not disposed on or before November 22, 2011, it will proceed to jury trial . . ." (Tr. 24). Carbon copies of this Order were sent to the prosecutor, Mason's attorney, and Mason, according to the Order. Therefore, Mason received notice of the plea deadline independent of his attorney.

Mason does not establish attorney error in failing to advise him of the plea deadline date. Instead, he invites the Court to assume such error and to speculate that he would have accepted the plea had his attorney acted differently. Mason bears the burden of showing both attorney error and prejudice stemming from the error, and he fails on both accounts regarding claim 2.

*Claim 3 – Mental evaluation.* Mason alleges he suffers from post traumatic stress syndrome. As a result, his attorney was ineffective for failing to seek a mental evaluation. Mason alleges, "The nature of his condition should have been further developed through an evaluation and presentation of expert testimony." *Docket entry no. 1, page 7.* Mason, however, does not state what the findings of such evaluation might have shown, nor does he suggest that an evaluation would have changed the outcome of the trial. The second prong of the *Strickland* test requires a showing of prejudice. Mason does not satisfy this requirement.

*Claim 4 – Expert witness:* Mason contends his lawyer was ineffective for failing to call an expert to "let the jury understand the effects a combination of alcohol and drugs would have on a person, including making them aggressive." *Docket entry no. 1, page 9.* Mason fails to specify what type of expert he envisions on this topic, and what testimony such an expert could offer that would add to the evidence adduced at trial. As previously described, the medical examiner detailed

the alcohol and drugs found in Walters' body.  Sellers and Flanagan admitted to the ingestion of pills and alcohol by themselves and Walters.  Sellers testified Walters threw the first punch, and Flanagan was questioned about his statement to police that Walters tackled Mason to start the fight.  Thus, the jury heard ample evidence of both drug and alcohol use, and of aggression by Walters.  Mason fails to identify an expert who could assist the jury on this issue, and suggest what testimony could be offered.  The claim amounts to a general allegation based upon hindsight.  Mason fails to show his attorney should have acted differently in this regard, and further fails to show such an expert would have changed the jury's guilty verdict.

*Claim 5 – Eyewitnesses:* Mason claims eyewitnesses were not called by his attorney and their testimony would have been favorable to him.  No names of the witnesses are offered, and no description of their favorable testimony is offered.  In the absence of more, this claim should be dismissed as without a factual basis.  Counsel cannot be faulted when the alleged witness is not identified and the impact of such testimony cannot be gauged when it is only described as "favorable".  *Docket entry no. 1, page 11.*

*Claim 6 – Denial of right to testify:* According to Mason, his trial attorney talked him out of testifying, citing Mason's criminal record.  Mason urges this was unreasonable behavior which amounted to ineffective assistance of counsel.  We disagree.  The transcript shows Mason's attorney conferred with him prior to Mason's decision not to testify.  The attorney told the trial court he was concerned about Mason's prior felony convictions and his statement given to Fort Smith Police being introduced if his client testified.

Our review of the transcript reflects Mason and his attorney were faced with a difficult decision.  The closing argument on behalf of Mason sought acquittal based on justification or, in the alternative, a conviction for manslaughter based on Mason's mental state.  Had he testified, the state would have introduced evidence of three prior felony convictions against Mason, who was 22 years old at the time.  The state could have countered any of Mason's trial testimony which was at odds with the "lengthy statement" he gave Fort Smith Police when the stabbing occurred.  (Tr. 241).  In

addition, Mason would have opened the door to questions about the knife, including at what point during the day he started carrying the knife, and how he disposed of the knife after the stabbing. He would have no doubt been asked why he barricaded himself in his apartment for hours after the stabbing, denying requests by Fort Smith Police to speak with him. Mason's counsel acknowledged there were "pros and cons" to this strategic decision. (Tr. 241). When viewed in the totality of the circumstances, we find Mason's counsel did not act unreasonably. It is possible his counsel viewed the considerable baggage which would have accompanied Mason's testimony as making the second degree murder conviction more certain. There is no suggestion Mason would have testified the knife was not his, that he did not stab and kill Walters, or that Walters was armed. In summary, the strategy taken by counsel was reasonable under the circumstances.

Even if Mason testified, he fails to show the result of the trial would have been different. The jury was under no obligation to accept Mason's explanation of what happened. Indeed, the most persuasive witness, with no baggage, might struggle to explain the use of a knife to end a fistfight. Mason fails to show his attorney ineffective in dealing with the decision for Mason to testify.

*Claim 7 – Victim's criminal history of drugs and violence:* Mason, as with many of his claims, states the victim had a "substantial criminal history of drugs and violence" but does not provide any data to support this assertion. *Docket entry no. 1, page 13.* We are left to speculate on precisely what the attorney should have introduced. Such speculation is an insufficient basis for deeming the attorney to have acted unreasonably. Also, Mason does not show how a history of drug use would have been relevant, when it was conceded the victim was using drugs and drinking heavily the day of the crime. Demonstrating the victim's history of violence, particularly involving weapons, may have aided Mason's defense, if he knew of the victim's past and thought the victim was armed. Mason, however, does not allege any more than a blanket statement of the victim's history of drugs and violence. This falls short of showing his attorney acted unreasonably, and falls short of demonstrating the trial's outcome would have been different.

*Claim 9 – Inconsistencies of state's witnesses:* Mason claims "many of the witnesses" testified inconsistently with prior statements given to the police, and his attorney was ineffective for "failing to even attempt to point out to the jury these apparent and obvious inconsistencies." *Docket entry no. 1, page 16.* Mason does not identify these witnesses nor cite the inconsistencies. The trial transcript tells a different story, as Mason's attorney effectively impeached Sellers and Flanagan with inconsistencies in their testimony and prior statements on a key trial issue – how the fight started. Mason's general allegation of ineffective assistance falls short based on his failure to identify the witness and the inconsistencies he contends his attorney should have pursued, and on a review of the trial transcript. Mason fails to show his attorney acted unreasonably, and fails to show he was prejudiced in this regard.

*Summary of ineffective assistance of counsel claims:* Defending Mason was a challenge, given the undisputed fact that Mason stabbed the unarmed Walters. None of the allegations of unreasonable attorney behavior are supported by facts. Even if we were to assume some unreasonable behavior on the part of Mason's counsel, he does not demonstrate the outcome of the trial would have been different but for his attorney's acts or omissions. Claims 1-7 and 9 are without merit.

*Claim 8 – Actual Innocence:* Actual innocence is one of the two claims for relief which are not claims of ineffective assistance of counsel. We have already considered actual innocence in the context of equitable tolling. As discussed, the *Schlup v. Delo*, 513 U.S. 298 (1995), standard is not met. Mason does not offer new reliable evidence of his innocence and he does not show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. 513 U.S. at 327. This claim is without merit.

*Claim 10 – Error by Arkansas Supreme Court:* Mason alleges the Arkansas Supreme Court "exalted form over substance" when in dismissing his Rule 37 petition because it was not properly verified as required by Arkansas procedural rules. He submits he was denied federal due process by this ruling.

14

> In order to establish a denial of due process, the petitioner must prove that the asserted error was so gross, *Taylor v. Minnesota*, 466 F.2d 1119, 1121 (8th Cir. 1972), *cert. denied*, 410 U.S. 956 (1973), conspicuously prejudicial, *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3rd Cir. 1967), or otherwise of such magnitude that it fatally infected the trial and failed to afford the petitioner the fundamental fairness which is the essence of due process. *Lisenba v. California*, 314 U.S. 219 (1941). In making this determination, the courts must review the totality of the facts in the case pending before them and analyze the fairness of the particular trial under consideration.

*Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. 1976). See also *Kennedy v. Kemma*, 666 F.3d 472, 481 (8th Cir. 2012).

In this instance, Mason cites no case to show the Arkansas Supreme Court erred in dismissing his appeal due to the lack of verification. State courts are the ultimate expositors of their own state's laws, and federal courts entertaining habeas corpus petitions are bound by the construction placed on a state's criminal statutes by the courts of that state except in extreme circumstances. *Mendiola v. Estelle*, 635 F.2d 487 (5th Cir. 1981). Here, the Arkansas Supreme Court explicitly ruled against Mason, and his displeasure with the decision does not diminish its force. There is no error in the Arkansas Supreme Court's interpretation and application of Rule 37. It follows that no error of constitutional magnitude occurred.

**Conclusion:** For the foregoing reasons, we recommend the petition for writ of habeas corpus be dismissed and the relief requested be denied because the petition is time-barred. In the alternative, we recommend dismissal and denial of relief because all claims are without merit.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

15

IT IS SO ORDERED this 12th day of November, 2015.


_____
UNITED STATES MAGISTRATE JUDGE